IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

LAMAR PLAYER,

      Petitioner,

v.                                          CASE NO. 1:10-cv-105-MP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* Amended Petition for a Writ of
Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 11.) Respondent filed a response
and an appendix with relevant portions of the state-court record. (Doc. 21.) Upon due
consideration of the Petition, the Response, and the state-court record, the undersigned
recommends that the Petition be denied.[1]

## Summary of State-Court Proceedings

The instant Petition stems from violation of probation (VOP) proceedings in
Alachua County, Florida. Petitioner was charged in December 2004 with possession of
cocaine with intent to sell, within 1000 feet of a place of worship. (Resp. Ex. A.) The
state filed an amended information in March 2005 charging Petitioner with tampering
with evidence, possession of a controlled substance, and possession of cocaine with
intent to sell, within 1000 feet of a place of worship. (Resp. Ex. A.) Petitioner pled no

---

[1]Because the Court may resolve the Petition on the basis of the record, the Court
has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules
Governing Habeas Corpus Petitions Under Section 2254.

contest to the possession of cocaine with intent to sell charge, without the place of

worship enhancement, as well as possession of a controlled sentence.  Petitioner was

sentenced to 9 months incarceration followed by two years of drug offender probation.

(Resp. Ex. B.)  Petitioner did not appeal his conviction or sentence.

Petitioner was charged with violating his probation in July 2005.  (Resp. Ex. C.)

The petition alleging violation of probation – which was subsequently amended several

times – alleged that Petitioner had failed to pay the costs of his supervision ($10.00 per

month), had committed a criminal offense of Possession of a Controlled Substance,

Possession of Drug Paraphernalia, and Trespass on Posted Property, had possessed

drugs as indicated by a positive result for cocaine on a urinalysis, and had failed to

successfully complete drug treatment.  After a hearing on November 9 and December

15, 2005, Petitioner was found to have violated his probation and probation was

revoked.  The state court sentenced petition to consecutive terms of 10 years and 5

years incarceration.  (Resp. Ex. C-F.)  On appeal, the First District Court of Appeal

("DCA") reversed and remanded the case on February 16, 2007.  *See Player v. State*,

949 So. 2d 306 (Fla. 1st DCA 2007).  The First DCA found that the state had failed to

prove that Petitioner had violated probation by possessing cocaine.  The First DCA also

found that the probation officer's testimony alone regarding the urinalysis result – without

the actual test results – was insufficient to find a violation of probation for possession of

drugs.  The First DCA remanded the case for further proceedings.

On remand, the trial court held a second hearing on June 21, 2007, and again

found that Petitioner had violated his probation.  (Resp. Ex. N.)  The court imposed the

same sentence.  (Resp. Ex. N.)  The First DCA affirmed without opinion, with the

mandate issuing on September 17, 2008.  (Resp. Ex. N, S; *Player v. State*, 989 So. 2d
1188 (Fla. 1st DCA 2008)).

Petitioner filed a motion for postconviction relief under Florida Rule of Criminal
Procedure 3.850 on December 23, 2008, but that motion was dismissed without
prejudice.  (Resp. Ex. T.)  Petitioner filed an amended motion on January 5, 2009, which
was summarily denied.  (Resp. Ex. T.)  The trial court also denied Petitioner's motion for
rehearing.  (Resp. Ex. T.)  The First DCA affirmed the trial court's denial of relief without
opinion, and the mandate issued on November 23, 2009.  (Resp. Ex. X, *Player v. State*,
21 So. 3d 816 (Fla. 1st DCA 2009)).

The instant Petition followed.  Petitioner asserts two claims: 1) that the trial court
erred by denying his postconviction motion without an evidentiary hearing; and 2) that
the First DCA erred by summarily affirming the denial of postconviction relief.  (Doc. 21.)
Respondent concedes that the Petition is timely, but opposes the Petition on the merits
and on procedural grounds.  (Doc. 21.)

## Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all
state court remedies that are available for challenging his conviction, either on direct
appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion
requires that prisoners give the state courts a "full and fair opportunity" to resolve all
federal constitutional claims by "invoking one complete round of the State's established
appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  The
requirement that a federal habeas corpus petitioner exhaust available state court
remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents"

his claim in each appropriate state court, alerting that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A petitioner must "do more than scatter some makeshift needles in the haystack of the state court record"; a reasonable reader should be able to understand the factual and legal bases for the claim. *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir.2005) (quotations and citations omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id.* at 1302, 1306.

## Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir.2011); see § 2254(e) (1).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams* ). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529

U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require

citation of our cases-indeed, it does not even require *awareness* of our cases, so long as

neither the reasoning nor the result of the state-court decision contradicts them." *Early v.*

*Packer,* 537 U.S. 3, 8  (2002) (emphasis in original). Further, "whether a state court's

decision was unreasonable must be assessed in light of the record the court had before

it." *Holland v. Jackson,* 542 U.S. 649, 652  (2004).

In *Gill v. Mecusker*, 633 F.3d 1272 (11th Cir. 2011), the Eleventh Circuit clarified

how the federal habeas court should address the "unreasonable application of law" and

the "unreasonable determination of facts" tests.  The court acknowledged the

well-settled principle that summary affirmances, such as the Florida First District Court of

Appeal's in this case, are presumed adjudicated on the merits and warrant deference.

*Id*. at 1288 (citing *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784–85 (2011),

and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir.2002)). "A

judicial decision and a judicial opinion are not the same thing," and the Supreme Court

has confirmed that determining whether the state court unreasonably applied the law or

unreasonably determined the facts requires only a decision, not an opinion. *Id*. at 1291

(citing *Harrington*, 131 S.Ct. at 784). Yet, the Supreme Court has never squarely

addressed whether under the "unreasonable application" test a federal habeas court

"looks exclusively to the objective reasonableness of the state court's ultimate

conclusion or must also consider the method by which the state court arrives at its

conclusion." *Id*. at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir.2002)

(summarizing the emerging circuit split)). The Eleventh Circuit concluded that district

courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id.* at 1291. In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result." *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id.* at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable. *Gill*, 133 F.3d at 1290.

### Collateral Review of Constitutional Claims

Because Petitioner's claims allege ineffective assistance, a review of *Strickland* is appropriate. Under *Strickland v. Washington*, 466 U.S. 668, 677-78 (1984), to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were

reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute

rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute

rules would interfere with counsel's independence–which is also constitutionally

protected–and would restrict the wide latitude counsel have in making tactical decisions."

*Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy,

[the Court] need not attempt to divine the lawyer's mental processes underlying the

strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en

banc). "No lawyer can be expected to have considered all of the ways [to provide

effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other
> reasonable courses of defense (that the lawyer did not think of at all)
> existed and that the lawyer's pursuit of course A was not a deliberate
> choice between course A, course B, and so on. The lawyer's strategy was
> course A. And [the Court's] inquiry is limited to whether this strategy, that
> is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's

unreasonable conduct might have had "some conceivable effect on the outcome of the

proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a

"reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id*. at 694. A "reasonable probability is defined

as a probability sufficient to undermine confidence in the outcome." *Id*.

When, as here, the state courts have denied an ineffective assistance of counsel

claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is

a difficult one. *Harrington* 131 S.Ct. at 786. The standard is not whether an error was

committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of

counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

### **Claim 1: State Trial Court's Denial of Petitioner's Postconviction Motion**

Petitioner asserts that the state trial court erred by denying Petitioner's motion for post-conviction relief "without conducting an Evidentiary Hearing upon Petitioner's Ineffective Assistance of Counsel Allegations without attaching portions of records that conclusively rebuttal the Allegations raised." (Doc. 11, at 5.) Defendant raised a number of claims of ineffective assistance of counsel in his post-conviction 3.850 motion, which were denied by the trial court. In the instant federal habeas petition, Petitioner appears to argue that the state court should have granted him an evidentiary hearing and did not point to sufficient record evidence in denying his ineffective assistance of counsel claims.

Respondent argues that insofar as Petitioner's first claim "relies on an alleged defect in a collateral proceeding," the claim is not cognizable on collateral review. *See Alston v. Dep't of Corr., Fla.*, 610 F.3d 1318, 1326 (11th Cir. 2010) (finding that because state "collateral proceedings are a state created right," the petitioner's "challenge to the state post-conviction proceedings does not provide a basis for federal habeas relief."). To the extent that Petitioner asserts that the state court erred by not granting him an evidentiary hearing and not attaching portions of the state-court record to its decision, these are challenges to the post-conviction proceedings and are not cognizable on federal habeas review.

Because Petitioner is proceeding *pro se*, however, the Court will liberally construe his motion to assert the same claims of ineffective assistance of counsel that Petitioner

raised in his state post-conviction motion under Rule 3.850. Petitioner claims that counsel who represented him in the violation-of-probation proceedings was ineffective in a number of different ways.

### *Ineffective Assistance of Counsel for Failure to Investigate Charge of Failing to Pay Costs of Supervision*

First, Petitioner was charged with violating his probation because he had failed to pay the costs of his supervision, $10.00 per month. Petitioner alleged in his 3.850 motion that his counsel had failed to properly investigate this charge, because counsel should have questioned the probation officer as to whether Petitioner "had been granted a limited release from all costs/fees associated with the probation" because Petitioner had recently been released from prison. (Doc. 11, at 5.) Petitioner asserts that his counsel should have requested a continuance in order to investigate these allegations further. The state court denied this claim on the grounds that being recently released from prison is not a "viable defense to the charge of failing to pay court costs." (Resp. Ex. T, at 20.) Accordingly, there was no reason for Petitioner's counsel to question the probation officer as to whether Petitioner had received a "release" from paying the costs of supervision. In any case, Petitioner presents no evidence that such a release is possible or that he had received any release. Petitioner has failed to show that his counsel's performance was deficient in this respect.

Even if counsel's performance was deficient in failing to question the probation officer regarding the existence of a "release" from payment of the costs of supervision, Petitioner has failed to show that he was prejudiced as a result of this alleged failing. At the hearing on Petitioner's violation of supervision, his probation officer testified that he

had counseled Petitioner upon the commencement of supervision that he was required to pay the costs of supervision. (Resp. Ex. D, at 8-10.) The probation officer stated that he believed that Petitioner understood his payment obligations, but that he still failed to make the required payments despite having an income of $900 per month. *Id*. at 9-10. The probation officer's testimony made it clear that Petitioner was required to pay the costs of supervision and that he understood that obligation. Even if Petitioner's counsel had questioned the probation officer as to the existence of the alleged "release," then, the outcome of the proceeding would have been the same.

### ***Ineffective Assistance of Counsel for Failure to Investigate New-Law Violations***

Petitioner next brings a number of claims related to his counsel's alleged failure to investigate the new-law violations charged in the petition – Possession of a Controlled Substance, Possession of Drug Paraphernalia, and Trespass on Posted Property. Petitioner's allegations related to his counsel's performance are hardly a model of clarity, but the Court will attempt to generously construe the allegations to raise the following claims: counsel was ineffective for challenging the evidence supporting the violation of probation charges; counsel was ineffective for failing to call witnesses to testify on Petitioner's behalf; counsel was ineffective for failing to object to hearsay evidence and inappropriate comments on the part of the prosecutor; counsel was ineffective because he had insufficient time to prepare for the hearing, failed to introduce himself to Petitioner at the county jail prior to the hearing, and failed to request a continuance; counsel was ineffective for failing to permit Petitioner to present information in his own defense; and counsel was ineffective for failing to call supporting witnesses at Petitioner's re-sentencing.

Petitioner alleges that his counsel was ineffective for not challenging the evidence supporting the violation of probation charges. Specifically, Petitioner alleges that his counsel "knew or should have known that evidence relied upon was not competent enough to support revocation of probation the affidavit based upon the alleged drug and trespassing charges, which the appellate court reversed the drug charges but never entertained or adjudicated the trespassing charge that was jointed with the condition #5." (Doc. 11, at 6.) The Court construes this statement as an argument that his counsel should have challenged the sufficiency of the evidence supporting the drug and trespassing charges when the violation of probation charges were heard on remand.

As an initial matter, the trial court did not hear new evidence following remand from the First DCA. The First DCA held that the state had failed to prove that Petitioner had violated probation by possessing cocaine. *Player v. State*, 949 So. 2d 306 (Fla. 1st DCA 2007). The First DCA also found that the probation officer's testimony alone regarding the urinalysis result – without the actual test results – was insufficient to find a violation of probation for possession of drugs. *Id.* The First DCA explicitly stated that it "affirm[ed] as to all other issues," including the failure to pay costs of supervision and the charge of trespass. *Id.* at 306. Accordingly , the December 21, 2007 hearing at the trial court was merely a re-sentencing hearing, not a de novo hearing on the violation of probation. The trial court judge stated that the First DCA

> remanded back for further proceedings, but didn't have any other specific instructions except to state that the charge of possession of cocaine and the VOP charge of testing positive were not sufficient to find revocation of probation. The other two charges, which they did not address, were the cost of supervision and the trespass.

(Resp. Ex. N, at 81.) Accordingly, the trial court judge addressed only the question of

whether he "would still revoke probation on the trespass. And the answer is yes, I would." (Resp. Ex. N, at 81.)

In other words, at the re-sentencing hearing, there was no reason for Petitioner's counsel to challenge the sufficiency of the evidence supporting the drug-related violations, because the First DCA had already found insufficient evidence to support those violations. The trial court re-sentenced Petitioner based on the other violations – the trespass and the failure to pay supervision costs – *not* the drug violations. Because the drug violations were no longer at issue at re-sentencing, the failure of Petitioner's counsel to challenge evidence supporting those violations could not have been deficient performance.

Petitioner further alleges that his counsel was ineffective for failing to challenge the sufficiency of the evidence supporting the charge of trespass, and alleges that his counsel was ineffective for failing to call witnesses to testify on Petitioner's behalf. As previously noted, the state trial court heard no new evidence at Petitioner's re-sentencing. (Resp. Ex. N.) Accordingly, Petitioner's counsel had no opportunity to challenge the sufficiency of the trespass charge at the re-sentencing. In denying Petitioner's 3.850 motion, the state trial court noted that

> [n]ew evidence or legal arguments are not addressed at a re-sentencing hearing. At that point a defendant's guilt has already been determined, and the only issue to be addressed by the court is the defendant's sentence. Therefore it would not have been appropriate for Defendant's counsel at re-sentencing to present any new evidence or arguments regarding the facts of Defendant's case.

(Resp. Ex. T, at 20.)

At the re-sentencing hearing, the state trial court referred to the transcript of the

original hearing and found that the transcript "establishes that the trespass, in fact, was established, it was proven." (Resp. Ex. N, at 85.) At that original hearing, Petitioner's counsel did argue at length that the evidence of trespass was insufficient for the court to find that Petitioner violated his probation. (Resp. Ex. D, at 47.) Petitioner's counsel argued that Petitioner was visiting his cousin at the time that he was arrested, and that he "certainly was not trespassing." (Resp. Ex. D, at 47.) Petitioner has pointed to no evidence to support his argument that his counsel's performance was deficient.

Petitioner further asserts that his counsel was deficient for failing to call supporting witnesses at the original hearing to rebut the charge of trespass. Petitioner asserts that his counsel should have called a "Mr. and Mrs. Johnson" of the Gardena Gardens Apartments, who would have testified that Petitioner was visiting them and was not trespassing. Petitioner asserts that he "could have told" his counsel about these witnesses "had counsel inquired of his client." (Doc. 11, at 7.) Petitioner claims that his counsel "never consulted" him or "allowed" him to provide this information. (Doc. 11, at 6.) Petitioner provides no reason, however, for his own failure to inform his counsel that there were potential exculpatory witnesses available. Nor does Petitioner provide any specific facts whatsoever to support his claim that his counsel somehow prevented him from conveying this information. In denying Petitioner's 3.850 motion, the trial court found that the

> public defender was appointed to represent Defendant in his violation of probation case on September 9, 2005, and Defendant was not sentenced until December. If Defendant had information valuable to his defense, he should have contacted his attorney with such information. An attorney cannot be found ineffective for being unaware of facts that a defendant did not share with him. This claim is without merit.

(Resp. Ex. T, at 20.) The trial court's finding that the performance of Defendant's counsel was not deficient was a reasonable application of *Strickland*. It was reasonable for the trial court to find that Petitioner had a minimum level of responsibility for bringing potential exculpatory witnesses to his counsel's attention. Petitioner cannot show that his counsel's performance was deficient, and he is not entitled to relief on this claim.

Petitioner also alleges that his counsel should have called these same supporting witnesses to testify at his re-sentencing. Petitioner asserts that the trial court should have examined the charges against him *de novo* at the re-sentencing hearing, and should have heard new evidence related to his guilt or innocence of the underlying charges. As noted above, however, the re-sentencing hearing was simply that: an opportunity for re-sentencing, not a chance to re-litigate the underlying issue of Petitioner's guilt with respect to the violation of probation. As the trial court held, denying Petitioner's 3.850 motion, "it would not have been appropriate for Defendant's counsel at re-sentencing to present any new evidence or arguments regarding the facts of Defendant's case." (Resp. Ex. T, at 20.) The performance of Petitioner's counsel was not deficient for failing to present additional evidence at a re-sentencing hearing. To the extent that Petitioner argues that the trial court erred by failing to treat the re-sentencing hearing as a *de novo* examination of his guilt, that argument implicates purely state-law issues and is not cognizable on federal habeas review.

Petitioner next asserts that his counsel was ineffective for failing to object to hearsay evidence and inappropriate comments on the part of the prosecutor. Nowhere in his petition does Petitioner point to any facts whatsoever to support these claims. Petitioner fails, for example, to identify the alleged "hearsay evidence" or the allegedly

inappropriate comments by the prosecutor.  Accordingly, the undersigned recommends that this claim be summarily denied, because Defendant has not met his burden of alleging "reasonably specific, non-conclusory facts that, if true, would entitle him to relief."  *Aron v. United States*, 291 F. 3d 708, 715 n.6 (11th Cir. 2002)

Petitioner next alleges that his counsel was ineffective because he had insufficient time to prepare for the hearing, failed to introduce himself to Petitioner at the county jail prior to the hearing, and failed to request a continuance in order to become more prepared.  Petitioner complains that his counsel was appointed immediately prior to the hearing and could not have properly prepared himself to represent Petitioner in such a short amount of time.  These claims appear to all refer to the re-sentencing hearing in June 2007.  Again, Petitioner has failed to point to any specific facts whatsoever to support his conclusory allegation that his counsel was unprepared for the hearing.  Petitioner's counsel was not required to introduce himself to Petitioner in the manner preferred by Petitioner.  Nor was he required to request a continuance if he had had sufficient time to prepare for the hearing.  The undersigned recommends that this claim be summarily denied, because Defendant has not met his burden of alleging "reasonably specific, non-conclusory facts that, if true, would entitle him to relief."  *Aron v. United States*, 291 F. 3d 708, 715 n.6 (11th Cir. 2002)

In sum, Petitioner has failed to show that his counsel rendered ineffective assistance under *Strickland* and, therefore, Petitioner is not entitled to habeas relief on these claims.

## *Trial Court's Failure to Hold a Preliminary Hearing*

Petitioner alleges that the trial court erred by failing to hold a preliminary hearing to determine his ability to pay the costs of his supervision. This is a purely state law matter, and Petitioner does not make any allegations that this alleged failure of the trial court implicated any federal constitutional right. Accordingly, Petitioner has presented no ground for federal habeas relief on this claim.

## Claim Two: State Appellate Court's Affirmance of Denial of Postconviction Relief

Petitioner's second claim alleges that the state appellate court erred by affirming the trial court's denial of post-conviction relief, where Petitioner's "ineffective assistance of counsel allegations [] were not conclusively rebutted by the records of the proceedings that were attached for appellate review." (Doc. 11, at 12.) It appears that Petitioner is simply asserting, as he did in Claim One, that the state court should have granted his post-conviction motion under Rule 3.850. The bulk of Petitioner's argument repeats, verbatim, his ineffective assistance of counsel allegations from Claim One. Insofar as Petitioner asserts that the state appellate court should have relied on different records or attached different portions of the state court record to its decision, the Court notes that a summary affirmance from the First DCA is entitled to the same deference on federal habeas review as a written opinion. The state court is presumed to have adjudicated the case on the merits, and is not required to produce an opinion in the form preferred by Petitioner. *See Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011). This claim fails for the same reasons discussed in detail above.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Accordingly, it is respectfully **RECOMMENDED:**

1. That the amended petition for writ of habeas corpus (Doc. 11) should be **DENIED**.

2. That a certificate of appealability should be **DENIED.**

**IN CHAMBERS** this 6th day of June 2013.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.